United States District Court
Southern District of Texas
FILED

JUN 1 4 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JON P. HARRISON | § | CIVIL ACTION NO  **B-04-096** |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | **JURY TRIAL REQUESTED** |
| | § | |
| TEXAS STATE TECHNICAL COLLEGE, | § | |
| AND INDIVIDUAL DEFENDANTS, | § | |
| DR. J GILBERT LEAL, PRESIDENT TSTC – | § | |
| HARLINGEN, | § | |
| PAT HOBBS, DEAN OF INSTRUCTION, | § | |
| ZULEMA GARZA, DIVISION DIRECTOR-CIS, | § | |
| LEONEL GOMEZ DEPARTMENT CHAIR–CST | § | |
| SUED IN THEIR INDIVIDUAL CAPACITIES | § | |
| | § | |
| Defendants | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

## A. PARTIES

1.    Plaintiff Jon Harrison was at all pertinent times a public employee of the Texas
State Technical College, Harlingen as a Faculty Member. The Plaintiff is a citizen
of the United States and resides in the State of Texas, within Hidalgo County.

2.    At all pertinent times, the individual Defendant Dr. J. Gilbert Leal, as President of
TSTC, Harlingen was and is responsible under the laws of the State of Texas for
the day-to-day running of TSTC, Harlingen and reports to and provides
recommendations to the Chancellor of TSTC system and the Board of Reagents
for the TSTC system. He has the power, authority, and duty to make employment
decisions within the law i.e. that are not based on illegal motives or actions. He
resides within the Brownsville division of the Southern District of Texas.

3.    At all pertinent times, the individual Defendant Pat Hobbs, the then Dean of
Instruction of TSTC, Harlingen, was and is responsible under the laws of the
State of Texas for the daily operations of the instructional standards at TSTC,
Harlingen and reports to and provides recommendations to President Leal,
TSTC, Harlingen. He has the power, authority, and duty to make employment
recommendations to President Leal within the law i.e. that is not based on illegal
motives or actions. He resides within the Brownsville division of the Southern
District of Texas.

4.    At all pertinent times, the individual Defendant Zulema Garza, the then Director
of the Computer Information Systems Instructional Division of TSTC, Harlingen,
was and is responsible under the laws of the State of Texas for the daily
operations of the Division for which she is responsible at TSTC, Harlingen and
reports to and provides recommendations to President Leal, TSTC, Harlingen.
She has the power, authority, and duty to make employment recommendations
to President Leal within the law i.e. that is not based on illegal motives or actions.
She resides within the Brownsville division of the Southern District of Texas.

5.    At all pertinent times, the individual Defendant Leonel Gomez, Program Chair –
CST, TSTC, Harlingen.  Leonel Gomez was and is responsible under the laws of
the State of Texas for the daily operations of the Department for which he is the
Chair at TSTC, Harlingen and reports to and provides recommendations to
President Leal, TSTC, Harlingen. He has the power, authority, and duty to make
employment recommendations to Pat Hobbs within the law i.e. that is not based
on illegal motives or actions. He resides within the Brownsville division of the
Southern District of Texas.

6.  The Defendant TSTC is an educational institution that the state of Texas has specifically waived immunity from suit and has the power and authority to issue bonds in its institution's name.

## B.  JURISDICTION

7.  This Court has jurisdiction over this lawsuit because the action arises under the First Amendment to the United States Constitution and is a lawsuit regarding a question of federal law.  It is a lawsuit for the alleged violations of 1st and 14th Amendment rights specifically provided for by 42 U.S.C. sec. 1983, and 28 U.S.C. sec.1331.  Venue is proper in the Brownsville Division of the Southern District of Texas.  Specifically, Plaintiff Jon Harrison is alleging that he is suffering severe and continuous adverse employment actions in retaliation for their exercise of their protected constitutional rights of association and free speech. Plaintiff Harrison alleges that he was denied employment by the TSTC, Harlingen in retaliation for his association with the other faculty, in violations of his right to association with others and political retaliation both in violation of the first amendment to the U.S. constitution.

## C.  QUALIFIED IMMUNITY

8.  The individual Defendants under the factual allegations of this case are not entitled to Qualified Immunity.  The basis for a claim of qualified immunity under a sec. 1983 claim is that "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Wilson v. Layne, 119 S. Ct. 1692, 1699 (1999).  In

Harrison – Original Complaint June 9, 2004

order to evaluate the validity of the claim of qualified immunity, it is necessary first to establish if the "Plaintiff Harrison has alleged a violation of a clearly established right." <u>Fontenot v. Cormier</u>, 56 F.3d 669, 673 (5th Cir. 1995); see also <u>Siegert v. Gilley</u>, 500 U.S. 226, 231 (1991). Next, it is necessary to ask if the defendant's actions were reasonable when judged by "clearly established" law at the time of the alleged violation. <u>Siegert</u>, 500 U.S. at 231-32; see also <u>Kelly v. Foti</u>, 77 F.3d 819, 821 (5th Cir. 1995).

9.    Plaintiff's exercise of his protected rights of speech, association and Whistle Blowing were a substantial and motivating factor in Defendants' decision to demote Plaintiff Harrison and ultimate termination. The Defendants' clearly illegal acts of retaliation directly resulted in loss of salary, severe mental anguish, and a substantial negative effect on his retirement benefits in the future that will continue for the rest of his careers and life. Defendants Dr. J Gilbert Leal, Pat Hobbs, and Leonel Gomez acted intentionally to chill Plaintiff Harrison's speech and rights to associate, and punish him for exercising his right to associate and his free speech rights. "In order for speech by a public employee to enjoy constitutional protection from retaliation by a public employer, the speech must involve a matter of public concern." <u>Denton v. Morgan</u>, 136 F.3d 1038, 1042 (5th Cir. 1998) (citing <u>Connick v. Meyers</u>, 461 U.S. 138, 147 (1983)); however, "An employee's speech may contain an element of personal interest and yet still qualify as speech on a matter of public concern." <u>Harris v. Victoria Independent School District</u>, 168 F.3d 216 222 (5th Cir. 1999). Moreover, speech can be of public concern even in light of the "fact that Plaintiff chose to file internal grievances rather than publicize their complaints [.]"<u>Benningfield v. City of Houston</u>, 157 F.3d 369 (5th Cir. 1998). "Neither the [First] Amendment itself nor our decisions indicate that . . . freedom [of speech] is lost to the public employee

who arranges to communicate privately with his employer rather than to spread his views before the public." Benningfield v. City of Houston, 157 F.3d 369 (5th Cir. 1998), (citing Givhan, 439 U.S. at 414-17).

10. Not all speech by public employees is automatically deemed to be protected speech inasmuch as it conflicts with their roles as public employees Kinsey v. Salado Independent School Dist., 950 F.2d 988, 992 (5th Cir.)(en banc), cert. den., 112 S. Ct. 2275 (1992); Professional Association of College Educators v. El Paso Community College Dist., 730 F.2d 258 262 (5th Cir. 1984), cert. den. 105 S. Ct. 248 (1984); Pickering v. Board of Ed. Of Township High School Dist. 205, Will County, Illinois, 88 S. Ct. 1731, 1734 (1968). In asserting that a public employee's speech is protected by the First Amendment, courts make distinctions between cases involving only speech, only association, or a combination of the two. This case involves both speech and association. The speech must be shown to have addressed a matter of public concern. Connick v. Meyers, 103 S. Ct. 1684, 1691-1692 (1983); Coughlin, 946 F.2d at 1156. The interests of the public employee as a citizen must outweigh the interests of the state as an employer in promoting the efficiency of its public services. Id at 1691-1692, citing Pickering, 88 S. Ct. at 1734; Coughlin, 946 F.2d at 1156-1157. If association is the issue, then the public employee only need show that the First Amendment values involved in their rights to associate activities outweigh the possible disruptive effect on their employer's provision of services. Coughlin, 946 F.2d at 1158; Kinsey, 950 F.2d at 993, citing McBee v. Jim Hogg County, Tex., at 730 F.2d 1009, 1016-1017 (5th Cir. 1984) (en banc.). Cases, such as this one involving both speech and association, are weighed for the degree to which the speech involves public concerns and for the degree to which the speech and

association disrupt the public workplace. Kinsey, 950 F.2d at 993-994; McBee, 730 F.2d at 1014-1016.

11.     The first amendment guarantees the right to associate in groups in order to further the lawful pursuit of common interests, and this is a right that has been recognized for several decades.  Intimidation or retaliation by government entities against individuals who exercise their right to associate violates the First Amendment. Orr v. Thorpe, 427 F.2d 1129 (5th Cir. 1970).  Protected First Amendment rights flow to unions, union members, and union organizers. Professional Association of College Educators v. El Paso Community College Dist., 730 F.2d 258 262 (5th Cir. 1984), cert. den. 464 US 881 (1984). The courts have refined the issue of speech by introducing the idea of "mixed" speech. Whistle blowing is also recognized as protected speech under the First Amendment. "This Court of Appeals [5th Circuit] has further clarified the contours of public employees' First Amendment free speech rights to report misconduct by fellow employees and officers.  We have held that public employees' speech reporting official misconduct, wrongdoing, or malfeasance on the part of public employees involves matters of public concern." Deborah Branton v. The City of Dallas 272 F.3d 730 (5th Cir. 2001).  Plaintiff's concerns regard his termination and refusal to re-hire because he spoke out on and reported on a number of issues that are protected speech and constitute constitutionally protected "whistle-blowing" as a form of free speech, his right to associate with other faculty members without the fear of illegal retaliation, and his right to grieve.

## D. **DISPUTED ISSUES OF MATERIAL FACT**

12. On or about August 25, 1983, Plaintiff Harrison was hired by TSTC – Harlingen as Program Chairman (now called Department Chairperson) of the Industrial Data Processing Technology Program (now called the Computer Science Technology Program).

13. On or about March 9, 1993, Plaintiff Harrison was loaned to TSTC – McAllen, which soon became South Texas Community College.

14. On our about June 1993, Plaintiff Harrison applied for a position at STCC. The Plaintiff was then demoted to instructor at TSTC, and was replaced as Program Chairman by Larry Alexander.

15. On or about September 1993, Plaintiff Harrison did not get the job at STCC. Plaintiff Harrison then returned to TSTC – Harlingen as an instructor.

16. During the 1997 – 1998 school year, Larry Alexander's health declined due to spinal cancer. The duties of Program Chair were then split by Dennis Althoff and Defendant Gomez.

17. During the latter half of 1998, Larry Alexander retired due to medical reasons.

18. On or about September 1, 1998, Plaintiff Harrison was promoted to Program chair as a replacement for Larry Alexander.

19. On or about September 7, 1999, Plaintiff Harrison was demoted to instructor yet again, resulting in a loss of income to the amount of $200 a month. He was replaced by John Hagle from the Network Information Management Program.

20. During June of 2000, Hagle was removed as Program Chair and was replaced by Defendant Gomez.

21. On or about August 7, 2001, Plaintiff Harrison received a satisfactory performance appraisal from Defendant Gomez, acting Program Chair.

22.  On or about January 25, 2002, Plaintiff Harrison sent a letter to the Faculty Senate concerning faculty workloads and requested that this issue be addressed to the campus administration.

23.  On or about April 10, 2002, Defendant Gomez, Dennis Althoff, and Tony Lozano sent a memo to Sue Garza asking that "something be done". Sue Garza approved the action the very next day.

24.  On or about May 22, 2002, Plaintiff Harrison received a satisfactory performance appraisal from Defendant Gomez.

25.  On or about June 13, 2002 Plaintiff Harrison received a non-renewal letter from Defendant Leal via Defendant Hobbs.

26.  On or about June 14, 2002, Plaintiff Harrison filed for an informal grievance with Defendant Gomez.

27.  On or about June 17, 2002, Defendant Gomez denied Plaintiff Harrison's request for a Hearing.

28.  On or about June 19, 2002, TFA requested a hearing on behalf of Plaintiff Harrison, TSTC Denies this request.

29.  On or about July 23, 2002, TFA again requested a hearing on behalf of Plaintiff Harrison.

30.  On or about July 24, 2002, TFA and Plaintiff Harrison receive a letter from Defendant Leal granting Plaintiff Harrison a hearing.

31.  On or about August 19, 2002, Plaintiff Harrison received a letter from Defendant Leal informing Plaintiff Harrison that his decision not to renew his contract stands.

### E.  COUNT 1 – 42 U.S.C. §1983.

32.  The Defendants, TSTC, Dr. J. Gilbert Leal, Pat Hobbs, and Leonel Gomez were acting under color of the laws and regulations of the State of Texas and TSTC,

9

as well as the rules, regulations and procedures of the Texas Education Agency, The Defendants.

## F. VIOLATION OF CONSTITUTIONAL RIGHTS

33.   Plaintiff Harrison's actions and statements, described in detail above involved a matter of political, social, or other concern and are constitutionally protected under the First Amendment.  Furthermore, Plaintiff Harrison's interest in their actions and statements outweighs any interest of the defendants in promoting the efficient operation and administration of government services. Further, Plaintiff Harrison's protected rights' of association are not legally required by the 5th Circuit to involve an issue of public importance.

34.   Plaintiff Harrison's speech and association were a substantial and motivating factor in the defendants' decision to deny employment to Plaintiff Harrison which has resulted in large losses of back pay, severe mental anguish, and substantial negative effects on his retirement benefits in the future that will continue for the rest of his career and life.  Defendants acted intentionally to chill Plaintiff Harrison's speech and rights to associate, and punish him for exercising these rights.

## G. DAMAGES

35.   As a direct and proximate result of Defendants' conduct, Plaintiff Harrison has suffered the following injuries and damages:

    a.    Severe loss of past, present and continuing earnings that is continuous
    b.    Severe damage to earning capacity past present and future that is continuous;
    c.    Severe and continuing mental anguish in the past, present and future;
    d.    Damage to pension and retirement benefits that will have a negative effect on the rest of his career and life into retirement.

## H. **ATTORNEY FEES**

36.   It was necessary for Plaintiff Harrison to hire the undersigned attorney to file this lawsuit. Upon judgment, Plaintiff Harrison is entitled to an award of attorney fees at $250.00 an hour as the reasonable and necessary hourly rate and all costs under 42 U.S.C. §1988(b)

## **CONCLUSION AND PRAYER**

For these reasons stated herein, Plaintiff Harrison asks for judgment against Defendant

TSTC and the individual defendants, jointly and severally for the following:

a.   Actual damages in the past, present and future, including, but not limited to: back pay,
b.   Damages for severe stress, acute mental anguish, loss of enjoyment of life that the Plaintiff have suffered in the past, present, and future;
c.   Punitive damages against all the individual Defendants to be paid individually by each individual Defendant as determined by the jury, for their illegal acts of Malice;
d.   Prejudgment and post judgment interest;
e.   Loss of future retirement benefits and compensation due to the illegal acts of the Defendants.
f.   After trial on the merits an injunction must be issued to ensure that the Plaintiff is reinstated to the position, salary, and retirement benefits that he would have been in if his constitutional rights had not been violated and that the defendants be enjoined from their continuing wrongful conduct.
g.   Reasonable attorney fees in the amount of $250 per hour and court costs.
h.   All other relief the court deems appropriate pursuant to the Federal Rules of Civil Procedure.


RESPECTFULLY SUBMITTED

By:
Truman W. Dean, Jr.
ATTORNEY-IN-CHARGE
State Bar No. 05623800
US Southern District # 5279
P. O. Box 2560
Cedar Park, TX 78630
512.257.2210 · fax 512.257.2218
ADMITTED IN THE SOUTHERN
DISTRICT OF TEXAS.

ATTORNEY IN CHARGE FOR

PLAINTIFF HARRISON


PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE THE PLAINTIFF
DEMANDS A JURY TRIAL FOR ALL ISSUES SO TRIABLE.