IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JON P. HARRISON | § | |
| | § | |
| vs. | § | C.A. B-04-096 |
| | § | |
| TEXAS STATE TECHNICAL COLLEGE, et al. | § | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TO HON. ANDREW S. HANEN, UNITED STATES DISTRICT JUDGE:

Defendant Texas State Technical College ("TSTC"), and Defendants Dr. J. Gilbert Leal
("Leal"), Pat Hobbs ("Hobbs"), Zulema Garza ("Garza"), and Leonel Gomez ("Gomez") (sometimes
collectively referred to as the "Individual Defendants"), by and through the Attorney General of
Texas, Greg Abbott, and the undersigned Assistant Attorney General, file this Motion for Summary
Judgment.

**I.**
**INTRODUCTION**

Plaintiff, a former TSTC senior instructor, sues Defendants under 42 U.S.C. § 1983 for
alleged violations of his First Amendment rights to free speech and association.   See Complaint at
para. 7.  Defendants move for summary judgment on Plaintiff's entire case against them.   The
grounds for summary judgment are:

1.      TSTC, as an arm of the State of Texas, moves to dismiss Plaintiff's suit against it based on
        Eleventh Amendment immunity.  In addition, TSTC is not a proper party defendant in a suit
        under Section 1983, as a matter of law.

-1-

2.     The Individual Defendants contend that Plaintiff cannot establish one or more of the essential elements of a *prima facie* case of First Amendment retaliation, as to both his "speech" claims and his "association" claims.

3.     Even if the Court finds that Plaintiff has established a *prima facie* case, the Individual Defendants assert that they are nevertheless entitled to qualified immunity.

4.     There is no evidence that any Defendant has played any part in keeping Plaintiff from securing new employment.

5.     The two-year statute of limitations bars Plaintiff's claims the predate the notice of the non-renewal of his contract.

## II.
## DEFENDANTS' SUMMARY JUDGMENT EVIDENCE

Defendants attach the following evidence in support of their Motion for Summary Judgment:

Exhibit A:     [Plaintiff's Response to] Defendants' First Set of Interrogatories to Plaintiff.[1]

Exhibit B:     Declaration of Stanley Pat Hobbs
               Ex. 1:  June 12, 2002 Memorandum re: contract non-renewal, plus attachments

Exhibit C:     Declaration of Leonel Gomez
               Ex. 1:  April 10, 2002 Memorandum re: Mr. Jon Harrison
               Ex. 2:  Email dated 1/25/02 from Jon Harrison to David Turbeville

Exhibit D:     Declaration of J. Gilbert Leal

Exhibit E:     Declaration of Sue Garza

---

[1]While these are unsigned by counsel and not verified by Plaintiff, this is the exact form in which they were served on Defendants (except that the list of 66 potential witnesses, attached as an exhibit to Plaintiff's answer to Interrogatory No. 3, is not included here.)

# III.
# ARGUMENTS AND AUTHORITIES

**A.    Plaintiff's Claims Against TSTC Should be Dismissed for Several Reasons**

1.____Eleventh Amendment Immunity Bars Plaintiff's Suit.

The Eleventh Amendment bars suits against the States in federal court by private individuals, including their own citizens. *Board of Trustees of the Univ. of Alabama v. Garrett,* 531 U.S. 356, 363 (2001). This immunity extends to any state agency or other political entity that is deemed the "alter ego" or an "arm" of the State. *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997). The Fifth Circuit traditionally applies a six-factor test in determining whether or not an entity is an "arm of the State." *See, e.g., Richardson v. Southern University*, 118 F.3d 450, 452 (5th Cir. 1997); *Vogt v. Board of Commissioners of the Orleans Levee Dist*., 294 F.3d 684, 689 (5th Cir. 2002); *Delahoussaye v. City of New Iberia,* 937 F.2d 144, 147 (5th Cir. 1991).[2] Specifically, the court considers:

> (1) whether the state statutes and case law characterize the agency as an arm of the state; (2) the source of the funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to state-wide problems; (5) whether the entity has authority to sue and be sued in its own name; [and] (6) whether the entity has the right to hold and use property.

*Richardson*, 118 F.3d at 452 (citing *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991)).

---

[2] A similar four-part test has also been used in several cases involving universities. *See Lewis v. Midwestern State Univ.*, 837 F.2d 197, 198-99 (5th Cir. 1988)(citing *United Carolina Bank v. Board of Regents*, 665 F.2d 553 (5th Cir. [Unit A] 1982)); *see also Idoux v. Lamar Univ. System*, 817 F. Supp. 637, 639-40 (E.D. Tex. 1993)(comparing the two tests). Under either test, TSTC qualifies as an arm of the State of Texas.

In applying this test, the Fifth Circuit determined that Southern University is an arm of the State of Louisiana. *Richardson*, 118 F.3d at 454. Southern was established in the Louisiana Constitution, was funded in part by the State of Louisiana, and its board was overseen by the Louisiana Department of Education. *Id*. at 454-55. Moreover, money judgments rendered against Southern or its board are payable from funds appropriated by the Louisiana legislature. *Id*. at 455. The governor, with the approval of the Louisiana Senate, appoints members of Southern's board, and Southern, with campuses across the State, was concerned with state-wide concerns. And finally, only Southern's board could be sued and hold property. *Id*. at 456.

TSTC, like Southern University, qualifies as an "arm of the State" and should be afforded Eleventh Amendment immunity. The "Texas State Technical College System is a coeducational two-year institution of higher education offering courses of study in technical-vocational education for which there is demand within the State of Texas." TEX. EDUC. CODE § 135.01. The System is made up of four campuses, *Id*. § 135.02, and is governed by a board of nine regents who are appointed by the Governor, with the approval of the Texas Senate. *Id*. § 135.22. Although the System may accept gifts and grants from public and private sources, the legislature annually appropriates funds to the System for administration, instruction, and physical plant operations. *Id*. § 135.07; General Appropriations Act, S.B. 1, III-204-207, 79th Leg. R.S. (2005). The Board may sue and be sued in the name of the System, TEX. EDUC. CODE § 135.55, and the System may accept real and personal property in the name of the State of Texas, *Id*. at 135.06(b). Should a judgment be entered against the Board, that judgment would be paid by legislative appropriation. General Appropriations Act, S.B. 1, IX-39, Sec. 6.22, 79th Leg. R.S. (2005). Finally, the Texas State Technical College System was established to "contribute to the educational and economic

development of the State of Texas" and "to serve the State of Texas though excellence in instruction, public service, faculty and manpower research, and economic development." *Id.* at 135.01(b).

It is clear, under the six-part test used by the Fifth Circuit, that TSTC is an arm of the State of Texas. It is, therefore, entitled to Eleventh Amendment immunity, and Harrison's suit against it should be dismissed.

2.    Tex. Educ. Code § 135.55 Does Not Waive Eleventh Amendment Immunity.

Plaintiff alleges that Texas Education Code section 135.55 completely waives TSTC's immunity from his suit. But this argument goes too far. Section 135.55 states: "The board may sue, and may be sued, in the name of the Texas State Technical College System, with venue being either in McLennan County or Travis County." While this provision, and others like it, have generally be construed by the Texas courts to waiver state sovereign immunity *from suit* in *state court, see e.g., Bates v. Texas State Tech. College*, 983 S.W.2d 821, 826-27 (Tex. App.–Waco 1999), this does not mean that sovereign immunity is waived for all claims or that this limited permission to sue abolishes TSTC's Eleventh Amendment immunity.

As explained in *Bates*, state sovereign immunity in Texas is comprised of two elements, immunity from suit and immunity from liability. *Id.*, at 827 (citing *Federal Sign v. Texas Southern Univ.*, 951 S.W.2d 401, 405 (Tex. 1997)). "Sue and be sued" provisions only waive immunity from suit. In a contract case, like in *Bates*, that is the end of the inquiry because waiver of immunity from liability in *contract* is presumed by the act of contracting itself. *Id.* But tort claims are another case altogether, as the State is not presumed to waive its immunity from tort claims even where immunity from suit is generally waived by statute. *See Texas State Tech. College v. Wehba*, 2006 WL 572022 (Tex. App.–Eastland, March 9, 2006) (not designated for publication)(holding that the Texas Tort

Claims Act, not § 135.55, controls TSTC's immunity from tort claims).  *Compare also Bates*, 983 S.W.2d at 826 n.6, 829 (finding Bates' fraud claims barred by the statute of limitations "without assuming that sovereign immunity does not bar [the] claim" in the first place)(double negative in original).  Of course, suits like this one brought under Section 1983 sound in tort and should be "interpreted against a 'background of tort liability.'" *Braden v. Texas A&M Sys.*, 636 F.2d 90, 92 (5th Cir. 1981)(citing *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492, 505 (1961)).  TSTC asks the Court to affirm that TSTC's immunity from suit for constitutional torts in federal court is not waived by Texas Education Code § 135.55.

Permitting suit against TSTC through its governing board in Travis County or McLennan County may waive sovereign immunity from certain suits in state court, but this should not imply a waiver of Eleventh Amendment immunity in federal court.  *See Laxey v. Louisiana Bd. of Trustees*, 22 F.3d 621, 623 (5th Cir. 1994)(citing *McKay v. Boyd Constr. Co.*, 769 F.2d 1084, 1086 (5th Cir. 1985)("waiver of immunity in state courts is not waiver of immunity in federal courts").  Likewise, institutions that have the power to sue and be sued in state court are often found to be "arms of the state" entitled to Eleventh Amendment immunity.  *See Laxey, id.*; *see also Richardson v. Southern Univ.*, 118 F. 3d at 456 (just because Southern's board could sue and be sued in state court did not mean that this weighed against affording Eleventh Amendment immunity to Southern. "In fact, precisely the opposite is true.")  For all of the foregoing reasons, TSTC should be afforded Eleventh Amendment immunity.

3.    TSTC Is Not A Proper Section 1983 Defendant

Lastly, it is not only Eleventh Amendment immunity that bars Plaintiff's claims against TSTC.  The statutory construction of 42 U.S.C. § 1983 that is universally applied by the federal

courts prohibits suits against state agency defendants that qualify as "arms of the state" because the States are not "persons" subject to suit under § 1983. *Laxey,* 22 F.3d at 623 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)). Texas courts apply this same rule. *Brinkley v. Texas Lottery Comm'n*, 986 S.W.2d 764, 771 (Tex. App.–Austin 1999, no pet.) ("Section 1983 applies only to 'persons' as that term is used in the statute. States are not 'persons' as that term is used in section 1983. Governmental entities that are considered 'arms of the state' are also not persons under section 1983." (Citing *Will v. Michigan State Police*.) "When a litigant seeks relief from the acts of a state agency under section 1983, he must therefore sue an individual in authority at an agency as opposed to the agency itself.")); *Scott v. Britton*, 16 S.W.3d 173, 179-80 (Tex. App.–Houston [1st Dist.] 2000, no pet.) (same, citing *Will*); *Turner v. Texas Dep't of Mental Health and Mental Retardation*; 920 S.W.2d 415, 419 (Tex. App.–Austin 1996, writ denied) (same, also citing *Will*).

Because TSTC is not a "person" under the statute, Plaintiff's § 1983 suit against it should be dismissed for failure to state a claim upon which relief can be granted, as a matter of law.

**B**.   **Plaintiff Has Failed To State A Cause Of Action For Retaliation Under The First Amendment**

    1.   The Summary Judgment Standard

In *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986), the Supreme Court reaffirmed that summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Here, plaintiff lacks evidence regarding several crucial pieces of his case. With respect to his First Amendment claim, he cannot show that he spoke out about a matter of public concern; further, there is no evidence that Defendants' decision to not renew Plaintiff's

employment contract was substantially motivated by any activity protected under the First Amendment related to Plaintiff's membership in a union. Thus, defendants are entitled to summary judgment as a matter of law.

    2.    <u>Summary Judgment Is Proper on Plaintiff's Free Speech Claims</u>

Where an employee seeks to prevail on a First Amendment retaliation claim, the Supreme Court has set forth the following test: (1) the plaintiff must show that the speech involved a matter of public concern; (2) he must prove that the speech was a substantial or motivating factor in his termination; and (3) the defendant can avoid liability by showing that it would have taken the same action even in the absence of the protected conduct. *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gerhart v. Hayes*, 217 F.3d 320, 321 (5th Cir. 2000). In this case, Plaintiff's speech did not involve a matter of public concern.

Whether the speech at issue is a matter of "public concern" is a legal question and, thus, appropriate for resolution on summary judgment. In *Connick v. Myers*, 461 U.S. 138, 147 (1983), the Court held that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest" his speech is not entitled to constitutional protection. Speech that is "primarily motivated by," or that primarily addresses, the employee's "own employment status rather than a matter of public concern" is not protected. *Foley v. University of Houston System*, 324 F.3d 310, 317 (5th Cir. 2003) (emphasis added). *Accord Terrell v. University of Texas System Police*, 792 F.2d 1360, 1361-63 (5th Cir. 1986), *cert. denied*, 479 U.S. 1064 (1987). *See also Carey v. Aldine Independent Sch. Dist.*, 996 F.Supp. 641 (S.D.Tex. 1998):

[B]ecause almost anything that occurs within a public agency could be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee. Rather, our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as a citizen or primarily in his role as an employee. In making this determination, the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment.

*Id.* at 647.

In short, if the employee is speaking as an employee, on matters that address his personal employment conditions, the First Amendment simply does not protect him from an adverse employment action for engaging in that speech. *Ayoub v. Texas A&M University*, 927 F.2d 834, 837 (5th Cir. 1991). Attached as Exhibit A to this motion is Plaintiff's responses to Defendants' interrogatories that inquire about the "speech" which Plaintiff's contends is the foundation of his suit. The list is short, and clearly demonstrates that the subject matter of the "speech" related to complaints Plaintiff voiced about his working conditions at TSTC: failure to follow policies related to hiring from within; lack of sufficient continuing education for instructors; restrictions of instructors access to certain internet sites; complaints about instructors workloads. While it is expected that Plaintiff may expound further on these topics in his response to this motion, the fact remains that the subject matter of this "speech" falls squarely outside the bounds established in this circuit for speech by a public employee.

The Fifth Circuit decision in *Kennedy v. Tangipahoa Parish Library Board of Control*, 224 F.3d 359 (5th Cir. 2000), surveyed all of the cases involving "mixed speech" in the circuit (that is, cases where a public employee might complain about things related to his job, but still a matter of public concern) and concluded that there were "three reliable principles":

First, the content of the speech may relate to the public concern if it does not involve solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of the manager's status as an arm of the government. . . . If releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature . . . Second, speech need not be made to the public . . . but it may relate to the public concern if it is made against the backdrop of public debate . . . . And third, *the speech cannot be made in furtherance of a personal employer-employee dispute if it is to relate to the public concern.*

224 F.3d at 372 (citations omitted)(emphasis added).    It is virtually impossible for Plaintiff to separate any "speech" he has referenced as being the basis of his claim from some personal employer/employee dispute he was involved in with TSTC administrators.  Defendants are fully secure in the fact that any review by the Court of Plaintiff's evidence will demonstrate that his alleged "speech" is not constitutionally protected.  Defendants ask that summary judgment be granted on these claims.

3.    Plaintiff Cannot Establish the Prima Facie Elements of his Association Claim.

The First Amendment protects a public employee's right to associate with a union.  Hitt v. Connell, 301 F.3d 240, 245 (5th Cir. 2002).    State action designed to retaliate against public employees from joining a union or from taking an active part in its affairs violates that right.  *Id.*, at 245-46.  To prevail on a First Amendment retaliation claim based on this right to associate, a plaintiff must show (1.) an adverse employment action, (2.) his interest in "associating" outweighed the employer's interest in efficiency, and (3.) his protected activity motivated the adverse employment action.  *Id.*    Plaintiff's claim fails on all levels.    First, there is no allegation that Defendants attempted to retaliate against Plaintiff to keep him from joining a union; he was already a member.    Second, there is no evidence that Plaintiff was "taking an active part" in union affairs.

-10-

Even if Plaintiff produces such evidence, there is no evidence that any decision maker was aware any such activity so as to form "motivation" for any adverse action.  See Exhibits B-D.

Further, only the Plaintiff's non-renewal claim was filed within the two year statue of limitations.   His other complaints, of being "demoted" by twice losing his administrative appointment as department or program head, and being "publicly chastised" on another occasion–assuming Plaintiff can establish that these are adverse employment actions[3]–all occurred outside the two year statute of limitations.  *Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001).

**C.    Even Assuming, *Arguendo*, That Plaintiff Has Stated A Claim Under The First Amendment, Each Of The Individual Defendants Is Entitled To Qualified Immunity**

As this Court is well aware, government officials "performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v.*

---

[3]Under Title VII jurisprudence, which is persuasive here, ultimate employment decisions that are actionable include decisions to hire, discharge, promote, compensate or grant leave, but not events such as disciplinary filings, supervisor's reprimands, or even poor performance reviews." *Elgaghil v. Tarrant Co. Junior Coll.*, 45 S.W.3d 133, 142-43 (Tex. App.–Ft. Worth 2000, pet. denied)(summary judgment affirmed); *Winters*, 132 S.W.3d at 575 (same)(citing *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995)).  "Likewise, hostility form fellow employees, verbal threats to fire, reprimands, criticism of the employee's work, and negative employment evaluations do not constitute actionable adverse employment decisions." *Elgaghil*, 45 S.W.3d at 143 (citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707-08 (5th Cir. 1997)).  *C.f.*, *Ibezim v. Texas Dep't of Health*, 2004 WL 1574488 at *6 (Tex. App.–Austin, July 15, 2004, no pet.)(not designated for publication)(applying federal case law in affirming no-evidence summary judgment on retaliation claim).   *See also Hockman v. Westward Communications, LLC*, 407 F.3d 317, 330-31 (5th Cir. 2004)(reviewing case law rejecting retaliation claims similar to Plaintiff's in this case); *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657-58 (5th Cir. 2002); *Brazoria Co., Texas v. EEOC*, 391 F.3d 685, 692-93 (5th Cir. 2004); *Ackel v. National Communications, Inc.*, 339 F.3d 376, 380, 385 (5th Cir. 2003).

*Fitzgerald*, 457 U.S. 800, 817-18 (1982); *Butz v. Economou*, 438 U.S. 478, 503-04 (1978)(scope of

immunity law is the same in actions against state officials). Whether the asserted federal right was

clearly established at the time at issue is a question of law. *Elder v. Holloway*, 510 U.S. 510, 515

(1994), discussing *Davis v. Scherer*, 468 U.S. 183 (1984).  The burden of proving the violation of

a clearly established right rests with the plaintiff. *Thompson v. Upshur County, Texas*, 245 F.3d 447,

456 (5th Cir. 2001).

The "contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640

(1987).[4]  Quoting from the Eleventh Circuit, the Fifth Circuit has observed, "pre-existing law must

dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for

every like-situated, reasonable government agent that what defendant is doing violates federal law

*in the circumstances*." *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997), *quoting, Lassiter v.*

*Alabama A.&M. University*, 28 F.3d 1146, 1150 (11th Cir. 1994)(en banc).

Finally, as qualified immunity "turns only upon the *objective* reasonableness of the

defendant's acts, a particular defendant's subjective state of mind has no bearing on whether that

defendant is entitled to qualified immunity. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998);

*Thompson v. Upshur County, Texas*, 245 F.3d at 457.  As shown in part C below, when the actions

of the individual defendants are assessed, none of those actions can be said to violate clearly

established law in the particularized manner required by *Anderson v. Creighton.*

---

[4] Anderson involved the warrantless search of a home, in reliance upon claimed exigent circumstances, which was subsequently held unlawful.  The Court held that the FBI agent should have been permitted to argue that he was entitled to summary judgment on the ground that, "in light of the clearly established principles governing warrantless searches, he could, as a matter of law, reasonably have believed that the search ... was lawful."  483 U.S. at 641.

**A.    Each Of The Individual Defendants Is Entitled To Qualified Immunity With Respect To Plaintiff's First Amendment Retaliation Claim Because The Law Was Not Clearly Established That Plaintiff's Speech was Protected**

As the Supreme Court observed in *Siegert v. Gilley*, 500 U.S. 226, 232 (1991), *reh. den'd*, 501 U.S. 65, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" . . . is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."   Here, Plaintiff allegations fail the threshold inquiry that the speech at issue have been on a matter of "public concern." Should the Court feel that public concern is shown, however, the individual defendants are still entitled to a dismissal of this claim based upon qualified immunity, because pre-existing law neither "dictated" nor "compelled" the conclusion that predicating an action Plaintiff's speech would violate federal law.  *Pierce v. Smith*, supra.   A review of the mixed speech cases during this period underscores that such speech would not have been regarded as "protected."   In conjunction with its round-up of self-described "mixed speech" cases, the court in *Kennedy v. Tangipahoa Parish Library Board of Control*, *supra*, discusses *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir.1993), which turns on "the hat" worn by the employee at the time the speech was made, and then skips to *Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir.1998), which it characterizes as "our next mixed speech case." 224 F.3d at 371.  In *Benningfield*, after conducting "an abbreviated content-context-form analysis" the court ultimately examines the content of the speech (police department employees complained about wrongdoing, such as contamination of criminal histories caused by mismanagement and, in some instances, deliberate tampering), and concludes that the speech relates to the public concern.[5]

---

[5]  The Kennedy court goes on to discuss mixed speech decisions from 1999, but for purposes of the qualified immunity inquiry in this case, they are outside the relevant time window.

Focusing on the hat worn by Plaintiff at the time he uttered his "speech," he was clearly wearing an employee cap. If we instead rely upon the content, he complains of no serious wrongdoing, or whistleblowing or the like. Either way, the individual defendants would be entitled to assume that Plaintiff's "speech" was not protected and that actions taken on account of that speech (assuming there were any) would not violate "clearly established constitutional rights." At a minimum, "[i]f it is unclear whether the [Plaintiff's speech] satisfies the public concern requirement, then [defendants] [are] entitled to qualified immunity ... because [their] actions did not violate [plaintiff's] clearly established First Amendment Rights." *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1297 (11th Cir. 1998).

## CONCLUSION

For all of the foregoing reasons, Defendants request the entry of summary judgment in their favor.

Respectfully submitted,


GREG ABBOTT

Attorney General of Texas


BARRY R. McBEE

First Assistant Attorney General

EDWARD D. BURBACH
Deputy Attorney General for Litigation

JEFF L. ROSE
Chief General Litigation Division

-14-

/s/ Shelley N. Dahlberg
TERENCE L. THOMPSON
Attorney in Charge for Defendants
Texas Bar No. 19943700
Southern District Bar No.26689
SHELLEY N. DAHLBERG
Texas Bar No. 24012491
Southern District Bar No. 415055
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2120
(512) 320-0667 [fax]

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document will be sent by electronic notification on April 4, 2006, to

Miguel Salinas
803 Old Port Isabel Road
Brownsville, Texas 78521

John E. Schulman
Schulman Law Firm, P.C.
9400 N. Central Expressway, Ste. 416
Dallas, Texas  75231

/s/ Shelley N. Dahlberg
SHELLEY N. DAHLBERG
Assistant Attorney General

-15-