# EXHIBIT C

## DECLARATION OF LEONEL GOMEZ

1. My name is Leonel Gomez. I have been employed with Texas State Technical College ("TSTC") as an instructor at its Harlingen campus since 1982. I served as the program chair of TSTC's Computer Science Technology Department ("CST") from approximately September of 2000 to August 2003.

2. I have known the Plaintiff, Jon Harrison, since he came to TSTC as an instructor in September of 1983. We were co-workers in the CST Department for many years. During the time I was the CST program chair, I was Mr. Harrison's supervisor.

3. Mr. Harrison has always had something of a sarcastic and abrasive personality, but during the time I was his supervisor I observed that his attitude toward his work had deteriorated significantly and his behavior was becoming increasing unprofessional and disruptive. As the time approached for a decision to be made as to whether or not the annual contracts of instructors in the CST program would be renewed for the term beginning in the fall of 2002, I decided that it would be in the best interest of our department if Mr. Harrison's contract was not renewed. My feelings were shared by the other members of department (excluding Mr. Harrison) and we expressed our opinion in a memorandum dated April 10, 2002, to our Division Director, Sue Garza. A true and correct copy of that memorandum is attached as Exhibit 1 to this declaration.

4. Sue Garza agreed with my recommendation, as noted by her signature on Exhibit 1. We forwarded our recommendation that Mr. Harrison's contract not be renewed to Mr. Pat Hobbs, who was the Dean of Instruction. At Mr. Hobbs' request, Ms. Garza and I collected certain documentary evidence of the behaviors addressed in our memorandum and provided them to Mr. Hobbs. In turn, he forwarded them Dr. J. Gilbert Leal along with a memorandum dated June 12, 2002, in which Mr. Hobbs expressed his recommendation that Mr. Harrison's contract be non-renewed. A complete copy of Mr. Hobb's memorandum and the documents attached to it are included as Exhibit 1 to Mr. Hobb's declaration of today's date, filed contemporaneously with this declaration in support of our Motion for Summary Judgment.

5. My decision to recommend non-renewal was based on my observations that Mr. Harrison's bad attitude toward his job, me personally, our students, and our administration had become such a problem that this outweighed the benefits of having a person of his experience on our staff. Mr. Harrison's behavior had gone from being generally grumpy and acerbic to the point of being hostile, cruel, unprofessional and, at times, outright insubordinate. This behavior was negatively impacting the morale of Mr. Harrison's coworkers and was making the management of our department excessively difficult for me. I decided something had to be done, and that Mr. Harrison's departure from our group was in the best interest of the department and TSTC in general.

6. We had numerous complaints from other instructors and students regarding Mr. Harrison's behavior. I believed Mr. Harrison's bad attitude and bad behavior were both affecting the quality of his teaching. I found Mr. Harrison's frequent comments that our students were worthless or taken *"from the bottom of the barrel"* to be particularly disturbing, especially since most of our students are Hispanic. Our efforts to monitor and improve his classroom performance were met with more angry outbursts and vitriolic behavior by Mr. Harrison. I had several conferences with Mr. Harrison regarding what I considered to be unprofessional behavior on his part, including one documented as part of his performance review in May of 2002. None of my efforts seemed to positively influence Mr. Harrison's conduct.

7. The factors that caused me to recommend that Mr. Harrison's contract be non-renewed did *not* include anything related to Mr. Harrison's membership in the Texas Faculty Association ("TFA") or any union-related activities. I only happened to know that Mr. Harrison was even a member of TFA because we once discussed certain insurance benefits provided to TFA members. In the course of a discussion which was related solely to a mail-out I had received regarding insurance offered through TFA, Mr. Harrison said he himself was a member and that he thought the insurance was a good deal. Never in all the years I have known Mr. Harrison have I heard of or witnessed any conduct on Mr. Harrison's part that could be considered as "union" organizing or promoting membership in TFA, or the bringing of complaints or grievances on behalf of TFA members, or anything of the kind. At the time Mr. Harrison's contract was non-renewed, if TFA members at TSTC – Harlingen had meetings or officers or took any group action at all regarding activities or events or issues on our campus, I was not aware of it. I was unaware of any involvement by Mr. Harrison with TFA other than just being a member, and this fact had absolutely nothing to do with my recommendation that his contract not be renewed. Mr. Harrison could have belonged to any group he wanted, and would likely still be employed here at TSTC, in my opinion, if his behavior and attitude had not been so atrocious. The two things had nothing to do with one another.

8. I have reviewed the incidents described by Mr. Harrison in his response to Defendants' interrogatories in this case as being those that he claims form the basis of his suit. The only response by Mr. Harrison that even references "union" activities appears in a January 25, 2002, memo to David Turberville of the Faculty Senate regarding Mr. Harrison's complaints about what he calls his "oppressive workload." Prior to the exchange of documents in discovery in this case, I had no recollection of ever having seen this document, which is actually an email, although I am shown as having been a "cc:" recipient. A copy is attached as Exhibit 2. If I was sent this document, and if I opened it, I have no recollection of reading it. I have no memory at all of seeing Mr. Harrison's off-hand suggestion that his "excessive" workload was the type of thing that "forces employees to form unions." It was not uncommon for Mr. Harrison to complain about his workload; he did it all the time. An email related to this topic would hardly have caught my attention. In any event, I can categorically state under oath that nothing in or about this email played any role whatsoever in my decision making regarding Mr. Harrison.

9. I have personal knowledge of the facts stated in this declaration, and I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 4, 2006.

                                                           /s/ Leonel Gomez  
                                                         LEONEL GOMEZ

# EXHIBIT 1

# TSTC Harlingen                    Interoffice memo
Texas State Technical College

Date: April 10, 2002

Reference
Number: lg01:2002

To: Sue Garza, CIS Division Director

From: CST Faculty

Subject: Mr. Jon Harrison, Senior Instructor, CST Department.

This memo addresses the problems the CST Department, as a whole, is having with Mr. Jon Harrison. For some time now, Mr. Harrison's attitude toward the students, CST Department, TSTC Administration and TSTC in general, has been very unprofessional.

Mr. Harrison's constant sarcasm and negative attitude towards every aspect of daily work has been well documented and is seriously hurting the moral of the department. He is treated with respect, but does not return the respect he is afforded.

Mr. Harrison has stated his opinion that TSTC consistently recruits students "from the bottom of the barrel", both in and out of the classroom. We feel his unprofessional behavior is reflected in the quality of his instruction, and is a major cause of student attrition within the department.

The CST Department is asking that something be done to rectify this situation.

Sincerely,

*[signature]*
Leonel Gomez, CST Program Chair

*[signature]*
Dennis Althoff, CST Senior Instructor

*[signature]*
Tony Lozano, CST Lab Assistant II

*Agreed: [signature] Sue 4/11/02*

# EXHIBIT 2

# jon harrison - FY2000 Faculty Productivity Standard

**From:** jon harrison
**To:** turbeville, david
**Date:** 1/25/02 4:13 PM
**Subject:** FY2000 Faculty Productivity Standard
**CC:** gomez, leonel

The usual maximum workload for a postsecondary teacher is four courses per semester or twelve lecture hours per week, as substantiated by the internet links below:

AAUP statement on faculty workloads:

http://www.aaup.org/statements/Redbook/rbwork.htm

National Center for Education Statistics--Mean classroom hours, etc. per week for college teachers of various ranks (1987 & 1992):

http://nces.ed.gov/pubs/ce/c9743d01.html

Labor department typical working conditions for college teachers:

http://www.bls.gov/oco/ocos066.htm#conditions

Workload guidelines for college English teachers:

http://www.ncte.org/positions/workload-col.html

That being the case, I am profoundly disconcerted by the FY2000 Faculty Productivity standard circulated by Pat Hobbs on the 18th of this month (copy attached). Without any mitigating language like "during the present emergency" or "in the absence of adequate funding," it sets twenty-four (lecture and lab) class hours per week as the TSTC standard workload.

That is excessive. Making a 25%+ overload TSTC's standard work assignment is the sort of management policy which forces employees to form unions.

Moreover, it is the sort of policy that our Faculty Senate should take the lead in renegotiating. Would you consider addressing this issue?

J. P. Harrison

*[Handwritten notes:]*
Research ?
Recruitment
Placement
Grading
Unit plans