# EXHIBIT D

## DECLARATION OF J. GILBERT LEAL

1.    My name is J. Gilbert Leal.  I have been employed with Texas State Technical College ("TSTC") since 1969.  I have served as the President of TSTC– Harlingen since 1978.

2.    I have known the Plaintiff, Jon Harrison, in a professional capacity since he came to TSTC as an instructor in September of 1983.  I have do not have substantial personal knowledge, however, of Mr. Harrison's skills, abilities, behavior, or performance.  Most of what I know is what I have been told by mangers and supervisors who report to me and others in his chain of command.

3.    In June of 2002, Pat Hobbs, the Dean of Instruction, approached me regarding a recommendation he was about to make that Mr. Harrison's annual contract for the term beginning in the Fall of 2002 not be renewed.  He told me, generally, what was happening with Mr. Harrison and why this action was being contemplated.  I was not particularly surprised, as I had heard many complaints over the years about how Mr. Harrison treated people.  Shortly thereafter, Mr. Hobbs sent me a memorandum outlining his reasons for recommending non-renewal.  A complete copy of Mr. Hobb's memorandum dated June 12, 2002, and the documents attached to it are included as Exhibit 1 to Mr. Hobb's declaration of today's date, filed contemporaneously with this declaration in support of our Motion for Summary Judgment.

4.    At no time in my discussions with Mr. Hobbs, or in my review of his recommendation for the non-renewal of Mr. Harrison's contract, did the subject of any involvement by Mr. Harrison with the Texas Faculty Association ("TFA") come up.  At that time, I had no knowledge that Mr. Harrison was even a member of TFA.  I certainly did not consider Mr. Harrison to be a "union" person, or a union organizer or promoter.  Not only did I not view Mr. Harrison in such a light, the truth is that the TFA was not an active or prominent player in events at TSTC Harlingen at that time at all, and these matters would not have even come to my mind.  If the TFA had organized meetings, or had officers, or had individuals actively promoting union activities at TSTC Harlingen in June of 2002, I was not aware of it.  In any case, I can unequivocally state that any association Mr. Harrison may have had with the TFA had absolutely nothing to do with my decision to approve the recommendation that Mr. Harrison's contract not be renewed.

5.    My decision to approve Mr. Harrison's non-renewal was based on the information provided to me by Mr. Hobbs.  When reviewing or approving a decision of this type, my principal focus is on whether or not the information provided to me would support the action requested.  Having reviewed the documentation supplied to me by Mr. Hobbs, I was particularly dismayed by some of the things that I read.  I believed at the time, and still do, that the recommendation being made to me was for legitimate reasons, and that the best interests of the institution would be served by not renewing Mr. Harrison's contract for another year.

6.    I have reviewed the incidents described by Mr. Harrison in his response to Defendants' interrogatories in this case as being those that he claims form the basis of his suit.   The only response by Mr. Harrison that even references "union" activities appears in a January 25, 2002, memo from him to David Turberville of the Faculty Senate regarding Mr. Harrison's complaints about what he calls his "oppressive workload." I was not copied on this document and I was never provided a copy, or informed of this "union" reference in it, by anyone prior to discovery in this lawsuit.  It played no role whatsoever in my decision regarding Mr. Harrison, as I had no knowledge of it.  The Faculty Senate does not report to the President, and sending something to that body does not give "notice" to me, unless the Senate decides to bring it to someone's attention in my office.  That did not happen in this case with regards to Mr. Harrison's memo of January 25, 2002.

7.    Lastly, any judgment that might be rendered in this suit would be paid from state appropriated funds.  I have considerable knowledge of such matters based on my experience and tenure as President of TSTC-Harlingen and am certain that this would be the case.

8.    I have personal knowledge of the facts stated in this declaration, and I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 4, 2006.


                                                    /s/ J.G. Leal
                                                    J. GILBERT LEAL