IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JON HARRISON § § § | |
| VS. § § | CIVIL ACTION NO.B-04-096 |
| TEXAS STATE TECHNICAL COLLEGE, § and Individual Defendants, DR. J. GILBERT § LEAL, PRESIDENT TSTC-HARLINGEN § PAT HOBBS, DEAN OF INSTRUCTION, § LEONEL GOMEZ, DEPARTMENT CHAIR § | |

**PLAINTIFF JOHN HARRISON'S RESPONSE TO
DEFENDANTS'MOTION FOR SUMMARY JUDGMENT**

Comes now, Plaintiff JON HARRISON, and files this his response to Defendants' Motion for Summary Judgment and in support would show the Court as follows:

BACKGROUND

1. Plaintiff Jon Harrison was employed as a full-time contract senior instructor with Defendant Texas State Technical College (TSTC). He was employed with the college for over 18 years. During his tenure with the College he received satisfactory evaluations and held the position of program chair for his department. (See Attachment "A"(Insert 1), Affidavit testimony of Jon Harrison, hereinafter referred to as Exhibit "A")

2. As an academician in a state college, Plaintiff Harrison was allowed to think and speak critically in furtherance of his teaching responsibilities. This "academic freedom" was made part of Defendant TSTC's policies and procedures which states in part, "a faculty member's comments are protected even though they may be highly critical in tone or content, or erroneous..." (See attachment "B" (Insert 2) TSTC policy and procedure; Academic Freedom, Tenure and Responsibility.)

3. In addition to the right of freedom of expression, Plaintiff Harrison also enjoyed a vested property interest in his position. (See exhibit "C" (Insert 3) TSTC policy and procedure; Employment Contracts). This property interest created a formal mechanism for the discipline and dismissal of contract employees that included a pre-disciplinary hearing and a due process hearing. (See exhibit "D" (Insert 4) TSTC policy and procedure; Discipline and Dismissal of Contract Employees.)

4. For the most part, the college honored Plaintiff with the constitutional protections afforded him by his position. He used the freedom of expression to speak critically of what he perceived as mismanagement, incompetence, or administration interference with the teaching function. His discussions were often frank and graphic, but intended to promote a more efficient teaching and learning environment. (See attachment "A")

5. As part of his employment, Plaintiff was evaluated annually. The evaluations were a mechanism "to provide faculty employees with a process for feedback related to job performance." (See exhibit "E" (Insert 6) TSTC System Operating Standard, Re: Faculty evaluations). As part of the evaluation process, Plaintiff Harrison was evaluated on his professional behavior towards students and colleagues. (*Id.*) In all the time Plaintiff was evaluated, he was never counseled or advised his behavior was unprofessional or could lead to his termination.

6. In the latter part of 1999 and into the new millennium, Plaintiff became more outspoken of the college's method of operation. Specifically, in September of 1999, Plaintiff sent an e-mail to the director of human resources that questioned the unilateral promotion of an individual to a director position that had not been posted. (See exhibit "F" (Insert 7) e-mail of September 1999) Six days later, had his position of Program Chair rescinded. (See Exhibit "G" (Insert 8) September 7, 1999 from Pat Hobbs). As part of Plaintiff's discontent with the direction the college was taking, he became an active member of the Texas Faculty Association. (TFA) The TFA is a faculty union for colleges and university.

7. In 2001, Plaintiff attended a program's chairman's meeting where he questioned Pat Hobbs on the lack of continuing professional education for its instructors. Plaintiff complained the lack of the continuing education was unethical and it defrauded students, faculty and taxpayers. On May 11, 2001, Plaintiff sent a memo to David Turbeville, (President of the Faculty Council) asking the council to investigate administration sponsored censorship of student and faculty access to the internet. On January 25, 2002, Plaintiff sent a memo to David Turberville asking that the Faculty Senate oppose the oppressive workload standard set by administration. In the memo, Plaintiff described the standard as "the sort of management policy which employees to form unions." On April 29, 2002, Plaintiff attended a Computer Science Technology Program attended by Defendant Gomez among others. Plaintiff's comments regarding the new workload were discussed and Plaintiff explained it was oppressive, stifled good teaching techniques and indicated the oppressive practices were worth going to court over. (See Attachment "A")

8. In response to the criticism and Plaintiff participation in the TFA, on June 12, 2002, Defendant Pat Hobbs recommended Plaintiff not have his contract renewed for the upcoming school year. (See exhibit "H"(Insert 9) Memorandum of Pat Hobbs). In his memo, Defendant Hobbs indicated "[Plaintiff] Harrison's belligerent and uncooperative conduct in and out of the classroom have been a source of constant disruption for the CST program for a number of years..." (*Id.*) The memorandum was received by Defendant Gilbert Leal who approved the non-renewal after spending two hours reviewing the documentation submitted by Defendant Hobbs. (See exhibit "I" (Insert 10) Deposition testimony of Gilbert Leal p.115)

9. As stated, Plaintiff Harrison first learned his conduct was a source of disruption to the college when he learned he had been fired. (See exhibit "A"). In addition, the college ignored its own policies by failing to inform Harrison of the basis of the proposed disciplinary action. (See exhibit "J" (Insert 11) TSTC, Policy Re: Pre-disciplinary hearings). It also failed to give him a due process hearing or afford him any of the rights guaranteed by the colleges policies and procedures.

10. Based on the facts listed above, it is Plaintiff's contention and belief he was terminated for exercising his constitutionally protected right of free speech and association as well as other constitutional claims. Plaintiff filed suit under 42 U.S.C. § 1983 alleging violation of his First Amendment right to free speech and association. On April 4, 2006, Defendants' filed a Motion for Summary Judgment. It is to that motion Plaintiff now responds.

## ARGUMENTS AND AUTHORITIES

A. Eleventh Amendment is not a bar to Plaintiff's Suit.

11. Section 1983, in relevant part, imposes liability on "[e]very person who, under color of any statute, ordinance, regulation custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution..." 42 U.S.C. § (2003).

12. The College President, Dean and Program chair are clearly person within this section. The second determination that needs to be made is whether TSTC is a "person" for purposes of a section 1983 action. The U.S. Supreme Court in *Monell v. Dep't of Soc. Servs.*, determined that municipalities and local government entities are considered persons within the meaning of § 1983. *Monell*, 436 U.S. 658, 98 S.Ct. 2018 (1978). The 5th Circuit extended *Monell* to include Texas Junior colleges *Goss v. San Jacinto Junior College*, 588 F.2d 96, 98 (5th Cir.), modified on other grounds, 595 F.2d 1119 (5th Cir. 1979).

13. TSTC has many of the same characteristics as a junior college. TSTC unlike a university is concerned primarily with local rather than state wide problems. Moreover, it has a degree of local autonomy that is unprecedented. Specifically, TSTC (through the college president) unilaterally decided the policies and procedures regarding disciplinary hearings, due process, etc., did not apply to Plaintiff Harrison. When asked to provide the authority for this waiver he responded it was his choice not to follow policy. (Exhibit "I" p. 77). Applying the *Goss* standard TSTC is a person for the purpose of Plaintiff's § 1983 claim.

14. In addition, immunity from suit is waived when there is a clear and and unambiguous expression of that waiver. Tex. Gov't Code §311.034; *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003). In this case, the Texas Legislature authorized that TSTC may sue and be sued. Tex. Educ. Code §135.55. The Texas Supreme Court has held that "sue and be sued" provisions waive immunity from suit. *Wichita Falls*, 106 S.W.3d at 696-97 (Tex. 2003).

B. Plaintiff has properly stated a 1st Amendment Retaliation claim

15. There are four elements to an employee's First Amendment retaliation claim: 1. The plaintiff must suffer an adverse employment decision. *Harrington v. Harris,* 118 F.3d 359, 365 (5th Cir. 1997) 2. The plaintiff's speech must involve a matter of public concern. *Thompson v. City of Starkville,* 901 F.2d 456, 460 (5th Cir. 1990) (citing *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684 (1983)). 3. The Plaintiff's interest in commenting on matters of public concern must outweigh the defendants' interest in promoting efficiency. *Id.* (citing *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731 (1968). 4. The plaintiff's speech must have motivated the defendant's action. *Id.* (citing *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568 (1977).

16. The first two questions are legal in nature. *See Connick,* 461 U.S. at 147-48, n. 7, 103 S.Ct. 1684. It is for a jury to resolve any remaining factual disputes as to whether Plaintiff's protected speech was a substantial or motivating factor in the adverse employment decision, or whether the employer would have made the same employment decision in the absence of protected speech. *Branton v. City of Dallas,* 272 F.3d 730, 739 (5th Cir. 2001).

17. Matters of public concern are those which can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684 (1983). In making the determination of whether the speech in question is a matter of public concern, the Court must consider the "content, form, and context of a given statement, as revealed by the whole record. *Connick,* 461 U.S. at 147-48, 103 S.Ct. 1684. In this case, Plaintiff wrote the Human Resources department regarding the college president failing to follow the college's hiring procedures. A public employee's speech reporting official misconduct, wrongdoing or malfeasance on the part of public employees involves matters of public concern. *Wilson v. UT Health Ctr.,* 973 F.2d 1263, 1269 (5th Cir. 1992). In addition, Plaintiff spoke about the oppressive work conditions caused by too many teaching hours. Specifically Plaintiff voiced the extra hours would cause teaching to suffer and directly effect the student's ability to learn. Clearly this touched on a matter of public concern.

18. Finally, Plaintiff was terminated for joining the Texas Faculty Association. In support of this claim, it is well known the college was anti-union and retaliated against TFA members employed at the Harlingen campus.. (See exhibit "K" Affidavit of Mary Aldrige Dean). In fact, shortly after Plaintiff's termination, The TFA elected officers for the first time in both the Harlingen and Waco chapters. Within days after the election, the president and vice president of the Harlingen chapter and the president of the Waco chapter simultaneously received notification of non-renewal of their employment. *Id.* The First Amendment clearly protects employee's right to associate with union and no independent proof of public concern is required. *Boddie v. Columbus, Mississippi,* 989 F. 2d 745, 748-749 (5th Cir. 1993).

C. Defendants are not entitled to Qualified Immunity.

19. As a full time contract employee, Plaintiff had a property interest in his job and was entitled to procedural and substantive due process. In this case, Plaintiff's vested right to due process was unilaterally denied by Defendant Leal who decided (without any supporting authority) that he could deprive Plaintiff of those rights by allowing his contract to expire.

20. Qualified immunity does not apply as a defense to a claim if the right violated [was] clearly established in a particularized manner, and... the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 334 (1987). Here the defendants clearly and methodically sought to deny Plaintiff his Due Process rights by ignoring the college's policies and procedures. The defendants further knew that by stifling Plaintiff's freedom of expression and freedom to associate they would chill free speech and discourage others from joining the TFA. The actions of the defendants clearly exceeded the scope of their authority. Moreover, the actions were intended to make an example of Plaintiff and the defense of Qualified Immunity is clearly improper in this context.

25. For the reasons stated above, Plaintiff would aver that a fact issue exists on the issue addressed in this Response and prays the court deny Defendants' Motion for Summary Judgment.

Respectfully submitted,

BY: *[signature]*
MIGUEL SALINAS
FEDERAL I.D. NO. 15171
STATE BAR NO. 17534750
803 Old Port Isabel Rd.
Brownsville, Texas 78521
956/550-1115 Telephone
956/550-1134 Telefax

John E. Schulman
Schulman Law Firm, P.C.
9400 N. Central Expressway, Ste. 416
Dallas, Texas 75231

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the true and foregoing copy of the Plaintiff's Response to Defendants' Motion for Summary Judgment was sent to the Defendant via telefax and regular mail on this the 19th day of May, 2006 to:

Hon. Terence L. Thompson
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
512/320-0667 (telefax)

ATTORNEY FOR DEFENDANTS

*[signature]*