## AFFIDAVIT OF MARY ALDRIDGE DEAN

STATE OF TEXAS

COUNTY OF _HIDALGO_

    BEFORE ME, the undersigned authority, on this day personally appeared Mary Aldridge Dean, whom being duly sworn and known to me, upon my oath and stated:

    My name is Mary Aldridge Dean. I am over the age of 18 and legally competent to give this Affidavit. I have never been convicted of a felony or a crime of moral turpitude. I am a citizen of the United States and a resident of the State of Texas. I am a permanent resident of Hidalgo County where I reside in the city of Mission, Texas. The following factual statements contained below are true and correct and based on my own personal knowledge.

    I am presently employed by South Texas College as a faculty member. I have been employed by the South Texas College since the spring of the 1996 school year.

    I am personally acquainted with Jon Harrison and I served as his Union (Texas Faculty Association) representative at the Texas State Technical College with regard to his termination from employment.

    I attended the grievance hearing with Mr. Harrison regarding his nonrenewal as a Faculty member at TSTC at the presidential level, with President José Gilberto Leal in 2002.

    In preparing for the hearing with President Leal I reviewed extensive written

Exhibit "K"

documentation regarding Mr. Harrison's employment dispute with TSTC, which revealed

among other things:

a) that Mr. Harrison had a career as an educator with Texas State Technical College
for approximately 19 years before he was nonrenewed after the spring 2002 semester;

b) that Mr. Harrison had a history of receiving mostly good evaluations;

c) that Mr. Harrison's May 2002 evaluation rated him at the level of, "expected
performance" in all categories including listening openly to different viewpoints
when resolving conflicts, refraining from criticizing other faculty members in the
presence of students, and working harmoniously and effectively with colleagues for
the betterment of his department and the college;

d) that Mr. Harrison had a multi-year history of writing e-mails or otherwise
speaking out, often bluntly, to try to improve Texas State Technical College
operations. Upon a careful review of the disputed e-mails I firmly concluded that Mr.
Harrison's complaining e-mails were far less abrasive or blunt than the similar numerous
e-mails I had sent over the years as a Faculty member at South Texas College to various
faculty, department chairs and higher level administrators.

e) that Mr. Harrison near the end of his tenure of employment in January 2002 wrote
a letter to the Faculty Senate concerning faculty workloads and scheduling in which
he stated:

**" Making a 25%+ overload TSTC's standard work assignment is the sort of
management policy which forces employees to form unions."**

f) that Mr. Harrison had no written form of historical discipline or threats of termination
regarding his alleged unprofessional conduct" prior to being separated from employment.

All of the items listed above were discussed with President Leal during Mr. Harrison's

termination grievance hearing. I specifically discussed with President Leal the January

25, 2002 memo to the Faculty Senate, specifically the sentence quoted above, during this

grievance meeting over Mr. Harrison's nonrenewal.

After the grievance meeting with President Leal, I was convinced that Mr. Harrison would be reinstated. I believed, based on my numerous years of providing grievance representation to teachers here in Texas and in Michigan that the evidence was clear and overwhelming that Mr. Harrison had been nonrenewed for illegal reasons and that his illegal and wrongful "nonrenewal" would be corrected. I was totally shocked that, in the face of overwhelming evidence and what I believed to be one of the strongest cases of retaliation I had ever represented a grievant on, the grievance was denied by President Leal.

I remained involved as a TFA organizer and representative at TSTC- Harlingen for several years after Mr. Harrison's nonrenewal and it became clear to me and I have personal knowledge of the TSTC-Harlingen Administration's hatred for and retaliation against TFA members and other Faculty member who they felt in any way was a "troublemaker"

After Mr. Harrison was terminated, in the next academic year, 2002-2003 the Texas Faculty Association elected officers for the first time in both the newly formed Harlingen and Waco Chapters.

Within days after the election results were known, the president of the Harlingen chapter the vice president of the Harlingen chapter and the president of the Waco chapter simultaneously received notification of nonrenewal of their employment. The Harlingen

chapter was comprised of union members who worked under the chain of command of Defendant, President José Gilberto Leal.

Further, during this same 2002-2003 school year, as a TFA organizer and representative I personally observed several incidents of anti-TFA animus and retaliation against TFA members employed at the Harlingen campus and numerous other TFA members at Harlingen reported to me their allegations of retaliation and intimidation against them by TSTC-Harlingen Administrators. Most of these TFA members employed at the Harlingen campus resigned in response to their perceptions of the alleged systematic retaliation, intimidation and oppression directed at them, which is in itself unusual to have such a massive amount of resignations of TFA members. What is also highly unusual is that the vast majority of the TFA members informed me they resigned without a job to go to, in their attempts to leave such a hostile and anti-TFA atmosphere at Harlingen.

I personally observed a rather tense conversation between TSTC faculty member Dominic Braune and a TSTC Law Enforcement Officer who was patrolling the Halls outside the faculty offices with a weapon. Mr. Braune confronted the officer carrying the weapon and demanded to know why he felt it was necessary for a law enforcement Officer to patrol the halls outside the Faculty offices with a loaded weapon.

Many of the TFA members were intimidated by this individual. I personally felt intimidated and threaten by this Law Enforcement Officer who treated me personally and

TSTC Faculty as if they were prisoners in a jail instead of faculty members at an

institution of Higher Education.


In my capacity as a TFA representative I accompanied TFA member Sophia Tor to meet

with this particular Law Enforcement Officer who was calling various TFA members into

his office to hound and intimidate the TFA members. He refused to allow me in the

meeting between him and TFA member Sophia Tor.  When I went to his office the day

before the meeting to ask for information regarding the nature of the meeting he refused

to discuss anything with me. On the day of the meeting I accompanied Ms. Tor and

waited outside the law Enforcement Office for Ms. Tor, because I was denied admittance

to the meeting by the law enforcement officer's secretary. I sent the secretary to the

office to tell him that I was her representative.  Then he came out and told me that I

would not be allowed into the meeting because he was investigating a crime.  When Ms.

Tor  came out of the meeting  from which I had been barred she was crying and visibly

shaken.

At the end of the 2002-2003 school year TFA member Tor, a long term employee of

TSTC- Harlingen resigned her employment based on what she alleged to me was her

negative and retaliatory treatment at the hands of TSTC- Harlingen.


I was also told by Ms. Sharon Reed Miller a former English teacher for TSTC- Harlingen

that she resigned over the nonrenewal of TFA Chapter President Clark Owen.

I was also told, in my capacity of TFA organize, by Ms. Ann Roberts that she resigned over what she alleged was ill treatment in retaliation for her TFA membership. She said that she would rather work in a high school than put up with TSTC any longer.

I was also told by Ms. Donna Bates, a non-member, that TSTC-Harlingen was illegally tempering with student enrollments and attendance to illegally receive financial reimbursement for phantom students. Ms. Bates told me she was worried that she personally would get into legal trouble because she attempted to drop from her class roles these phantom students and that the TSTC administration refused and blocked her from dropping these phantom students. She also resigned from her employment at TSTC-Harlingen and the news media in the Valley later reported that TSTC-Harlingen was force to reimburse either the state of Texas or the U.S. Department of Education for monetary payments to TSTC for these nonexistence students.

After Mr. Owens and Mr. Hancock settled their employment dispute with TSTC-Harlingen, I returned to TSTC-Harlingen on several occasions to organize. On one of these trips I was accompanied by Mr. Clark Owens and we were placing TFA membership material in TSTC-Harlingen Faculty members' mailboxes, pursuant to the terms of the settlement with Mr. Owens and Mr. Hancock with TSTC-Harlingen which they reached with TSTC though the legal offices of TFA.

While Mr. Owens and I were stuffing mailboxes in the building where Mr. Hancock had worked, I was verbally attacked and abused by a TSTC-Harlingen department chairman.

There were several people sitting around a table in a room where some faculty mailboxes were located. I placed the TFA membership packets in the mailboxes and then offered them to the people sitting around the table. One man stood up and removed the packet from his mailbox looked at it and shouted at me that I wasn't allowed pass out TFA materials. He said that no one wanted that stuff and ordered me to remove it from the mailboxes. I told him that I would be happy to take his back, but the rest of the TFA materials were going to remain in the mailboxes. He shouted at me again and told me to get them out. I responded that if he wanted them out of the mailboxes then he had better call Waco and talk to Chancellor Segura, because the Chancellor had given me permission to be on campus and recruit new TFA members. No one else around the table said anything, and none of them returned the materials. After we left that room Mr. Owens told me that the man who had shouted at me was the department chair in the department where Mr. Hancock had worked before he was nonrenewal.

I hereby swear and affirm that the above stated factual allegations are true and correct and based on my own personal knowledge.

_____
Mary Aldridge Dean

State of Texas
County of ~~Texas~~ HIDALGO

On the 19th of May, 2006, personally appeared before me, Dominic Braune,

_____ who is personally known to me

___✓___ whose identity I proved on the basis of *her Texas driver's license*

_____ whose identity I proved on the oath/affirmation of _____ a credible witness to be the signer of the above instrument, and he/she acknowledge that he/she signed it.

Melchor Chavez
Notary Public, State of Texas
My Commission Expires:
March 17, 2008

_____
Notary Public
My commission expires 3-17-2008